IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BRIGNOLA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-3884 |
| | : | |
| v. | : | |
| | : | |
| HOME PROPERTIES, L.P., *et al.*, | : | |
| | : | |
| Defendants. | : | |

April 25, 2013

**MEMORANDUM ORDER**

I.      **Introduction**

        In this matter, Plaintiff alleges that Defendants committed: (1) violations of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; (2) violations of the Pennsylvania Fair

Credit Extension Uniformity Act, 73 Pa. Stat. Ann. § 2270 *et seq.*; (3) violations of the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*; (4) Libel;

(5) breach of the Landlord Tenant Act of 1951, 68 Pa. Stat. Ann. § 250.101 *et seq.*; (6) Invasion of

Privacy; (7) Intentional Infliction of Emotional Distress; and (8) Civil Conspiracy. Plaintiff also

seeks declaratory relief.  *See* Second Am. Compl. *passim*.

        On February 23, 2011, Plaintiff filed a Second Amended Complaint (Dkt. No. 45).

Defendant Fair Collections & Outsourcing, Inc. filed a Motion to Dismiss (Dkt. No. 53).  On April

22, 2011, Defendants Home Properties, L.P. and William Henry, LLC jointly filed a Motion to

Dismiss (Dkt. No. 54).  Responses and replies ensued.

        For the reasons that follow, the Motions are granted in part and denied in part.

**II. Facts**

For purposes of deciding the Motions to Dismiss, this memorandum takes as true the facts as alleged in the Second Amended Complaint.

James Brignola ("Plaintiff") is an adult individual domiciled in Newark, Delaware. Defendant Home Properties, L.P. ("Home") is a limited partnership owned by Home Properties, Inc., with its principal place of business in Rochester, New York. Defendant William Henry, LLC ("Henry") is a limited liability company also owned by Home Properties, Inc., with its principal place of business in Rochester, New York. Home manages, leases, and collects rent for real properties owned by Henry in Pennsylvania, including the William Henry Apartments in Malvern, Pennsylvania. Defendant Fair Collections & Outsourcing, Inc. ("FCO") is a national debt collection company with its principal place of business in Beltsville, Maryland. FCO conducts its business throughout the United States, including in Pennsylvania.

In April 1987, Plaintiff's father, Andrew Brignola ("the deceased"), began leasing an apartment from Home on behalf of Henry in the aforementioned William Henry Apartments, where the deceased resided for the next twenty-two years. Second Am. Compl. ¶ 30. Throughout that time, Home held the deceased's $625.00 security deposit for tenancy. *Id.* ¶ 31. On October 21, 2009, the deceased suffered an adverse medical event and died intestate in his apartment, without providing Home with its required sixty days notice that he would be ending his lease and vacating his apartment. *Id.* ¶ 32. On October 27, 2009, Plaintiff met with Home's site manager to conduct a walkthrough of the deceased's apartment and requested a refund of the deceased's security deposit. *Id.* ¶ 33. During this meeting, Plaintiff provided Home with a signed document bearing his name,

address, telephone number, and Social Security Number, as requested by Home to purportedly facilitate a refund of the security deposit. Id.

Rather than refunding the security deposit, Home's manager sent Plaintiff an invoice on November 20, 2009, for $41.86 in utilities and service fees owed by the deceased, with a due date of December 1, 2009. Id. ¶ 34; *see id.* Ex. I. Plaintiff thereafter repeatedly inquired with Home as to the status of the security deposit. *Id.* ¶ 35. On December 8, 2009, Home's Leasing Office wrote Plaintiff a letter to inform him that Home was determining a final resolution of the security deposit; the letter included a new "final" invoice for $9.78 for the same charges as listed in the November 20 invoice, due immediately. *Id.* ¶ 35-36; *see id.* Ex. J.

Simultaneously with its December 8, 2009 letter, Home sent Plaintiff a "Statement of Deposit" that assessed $815.32 in charges, including $96.32 in allegedly unpaid utility and other fees, and $719.00 for one month's additional rent because the deceased had failed to notify Home he would vacate the apartment prior to his unexpected death. *Id.* ¶ 37-39; *see id.* Ex. J. After deducting the security deposit of $625.00 from these charges, Home required Plaintiff personally pay the balance due of $190.32 within 30 days, or he would be "subject to further action by [Home's] Collection Department." *Id.* ¶ 39-40; *see id.* Ex. J. In January 2010, Plaintiff's attorney sent a letter to Home disputing these charges, but within a week, Plaintiff's attorney received a letter from Home's counsel reaffirming these charges as valid claims against the deceased's estate. *Id.* ¶ 41-42; *see id.* Ex. K; *id.* Ex. L.

On February 15, 2010, Plaintiff received a telephone call from FCO informing him that FCO was attempting to collect a debt owed by Plaintiff to William Henry Apartments; Plaintiff contested these charges by informing FCO that the deceased allegedly owed the debt. *Id.* Ex. N, at 2:9-19,

5:17-19, 8:20-9:19. FCO called Plaintiff again on February 19, 2010, to apprise him that his account

with FCO had been cancelled because his Social Security Number had been erroneously affixed to

the deceased's debt charges. *Id.* Ex. N, at 27:21-28:15. During that call, FCO offered to send

Plaintiff a letter as confirmation that his account had been cancelled. *Id.* Ex. N, at 28:16-29:5. On

March 1, 2010, however, FCO sent Plaintiff an invoice for $190.32 to collect Home's and Henry's

debt, stating that "[t]he three major credit bureaus may be notified of this delinquency if you fail to

negotiate payment" and that "[f]ailure to pay this debt may result in you not being able to rent

another apartment." *Id.* ¶ 43-44; *see id.* Ex. M. FCO's invoice noted that Plaintiff's account would

be "assigned to a professional debt collector on [March 16, 2010]," yet (inconsistently) stated that

"THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR." *Id.* ¶ 45; *see id.*

Ex. M. During the following two months, Plaintiff received at least four phone calls from FCO

demanding a payment of $190.32; each time, Plaintiff explained the mixup and was assured his

account would be corrected to prevent his credit score from being affected. *Id.* ¶ 47.

On May 19, 2010, without notifying Plaintiff, FCO posted a negative report of Plaintiff's

purported delinquency with at least one credit reporting agency. *Id.* ¶ 48; *see id.* Ex. S. Plaintiff then

received a letter from FCO dated May 24, 2010, requesting Plaintiff pay the deceased's alleged debt

without any reference to the adverse credit report against him. *Id.* ¶ 51; *see id.* Ex. T. Unaware of

this negative report, Plaintiff called FCO on May 28, 2010, and was once again advised that his

account with FCO had been cancelled and that the adverse accounting would not show up on his

credit report. *Id.* Ex. N, at 38:10-14.

In June 2010, Plaintiff attempted to refinance his mortgage to decrease his interest rate from

5.5% to 4.125%, at which time he first became aware of FCO's derogatory posting and the

4

concomitant 200-point drop from his previous 809-point credit score. *Id.* ¶ 52. This reduction in

Plaintiff's credit score made it impossible for him to refinance his mortgage at the lower interest rate.

Id. On July 23, 2010, FCO sent Plaintiff a letter indicating that it had removed him from its debt

collection system and had sent corrective information to the credit reporting bureaus, but FCO's

adverse posting was not removed from Plaintiff's credit report until August 17, 2010. *Id.* ¶ 53-54.

Defendants' attempts at collecting the deceased's debt from Plaintiff, and the resulting

decrease in Plaintiff's credit score, caused emotional distress and anxiety that led Plaintiff to suffer

a series of detrimental medical events over the course of a year, including rapid weight fluctuations,

charted blood-pressure increases, and a critical alert for a diabetic coma. *Id.* ¶ 59.


## III.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v.

Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). After the Supreme Court's decision

in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of

action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*,

556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable of the

alleged misconduct." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies

to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.*; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation.") (quoting *Iqbal*, 556 U.S. at 677). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).

## IV. Discussion

The Court addresses the Counts of the Second Amended Complaint *seriatim*.

### 1. Count I: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

Plaintiff's asserts violations by Defendants of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692P (2012). The FDCPA imposes civil liability on "debt collectors" that utilize abusive debt collection practices. § 1692(e); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608-09 (2010). A debt collector, defined as any entity that "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another," may be "any business the principal purpose of which is the collection of any debts." § 1692a(6). The FDCPA prohibits a debt collector from, *inter alia*, (1) communicating with a "consumer"[1] at any unusual or inconvenient time or place, such as after nine o'clock postmeridian, without prior consent of the consumer, § 1692c(a)(1);[2] (2) harassing, oppressing, or abusing any

---

[1] A consumer is defined by the FDCPA as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). Plaintiff was a consumer while Defendants attempted to collect the debt at issue here because Defendants alleged that Plaintiff was obligated to pay the deceased's debt.

[2] For the purpose of § 1692c, "the term consumer includes the consumer's spouse." § 1692c(d) (internal quotation marks omitted).

person in connection with collection of a debt, including "engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," § 1692d(5); (3) making any false, misleading, or deceptive representations as to a debt's character, amount, or legal status, § 1692e(2)(A); (4) threatening to take any action against the consumer that cannot legally be taken, § 1692e(5); (5) communicating to any person credit information that is false or that should be known to be false, including a failure to communicate that a debt is disputed, § 1692e(8); (6) using any false, misleading, or deceptive means to attempt to collect any debt, § 1692e(10); and (7) attempting to collect an amount not permitted by law, § 1692f(1).  Yet where a debt collector exhibits by a preponderance of evidence that any such "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," the debt collector may not be held liable for failing to comply with the FDCPA. § 1692k(c); *Jerman*, 130 S. Ct. at 1609 (quoting the FDCPA).

A "creditor," on the other hand, defined as "any person who offers or extends credit creating a debt or to whom a debt is owed," generally does not fall under the purview of the FDCPA when the creditor attempts to collect his own debt or any other debt acquired prior to a debt going into default. § 1692a(4); *see also Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 118 (3d Cir. 2007) ("Th[e] definition of debt collector excludes creditors who attempt to collect their own debts, but does not exclude an entity . . . who has acquired a debt that was already in default.") (internal quotation marks omitted); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors – as opposed to debt collectors – generally are not subject to the FDCPA.") (internal quotation marks omitted).  There is an exception to this general rule: a creditor will be held liable as a debt collector utilizing abusive debt collection practices when the creditor, "in the process of

collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." § 1692a(6).

FCO does not dispute that it meets the definition of a debt collector for purposes of the FDCPA. FCO's principal business is that of regularly collecting or attempting to collect debts for others, including for Home and Henry. The deceased's alleged debt at issue, which FCO attempted to collect against Plaintiff, was acquired by FCO after Home and Henry had determined the debt was in default and had retained FCO to collect the debt. Moreover, FCO's communications with Plaintiff regarding said debt all included statements that FCO's efforts were by a debt collector attempting to collect a debt. *See, e.g.*, Second Am. Compl. Ex. M; *id*. Ex. N *passim*; *id.* Ex. T. FCO does dispute, however, that Plaintiff can sustain any of his claims against it for violating the FDCPA.

Plaintiff claims that FCO (1) misrepresented the character, amount, and legal status of the debt; (2) used false representations and deceptive means to attempt to collect the debt; and (3) attempted to collect an amount not permitted by law. Second Am. Compl. ¶ 66. Plaintiff has also adduced evidence to demonstrate that FCO (1) communicated with Plaintiff's wife about the debt at issue after nine o'clock postmeridian without Plaintiff's prior consent, *id.* Ex. N, at 26:23-27:13; (2) repeatedly engaged Plaintiff in telephone conversations, *id.* Ex. N *passim*; (3) threatened to take action against Plaintiff for a debt allegedly owed by the deceased, *id.* Ex. M; and (4) communicated to at least one credit reporting agency that Plaintiff had not paid an owed debt, despite that Plaintiff had repeatedly disputed the debt, *id.* Ex. S.

FCO's counter-arguments misinterpret the FDCPA and its application. FCO states that debt collectors are allowed to report debts to credit agencies in an attempt to collect debts, but the FDCPA expressly prohibits such communications when the information is false or should be known to be

false, including when the debt is in dispute. Though FCO asserts that the information it provided to a credit agency about Plaintiff's delinquency was true, it acknowledges that "Home . . . had a claim against [P]laintiff, which was in dispute." Def. FCO's Mot. Dismiss ¶ 8.  Plaintiff claims and provides evidence that FCO knew that the information it reported to a credit bureau was in dispute, and thus has provided a valid claim supported by factual content against FCO.

FCO also asserts that it attempted to collect an amount that Home was authorized to charge under the law, and that Plaintiff cannot state a claim against it when the sole basis of the claim is that FCO attempted to collect a debt from the wrong person. This assertion misconstrues the law: the FDCPA proscribes attempts to collect an amount not permitted by law, and if Plaintiff did not owe any debt, then FCO's attempts to collect the deceased's alleged debt against Plaintiff would be statutory violations.  FCO neither asserts nor offers evidence that it violated the FDCPA based on bona fide error, instead arguing that Plaintiff's claims are not valid. Plaintiff, however,  has shown that he is entitled to bring these claims here. Viewing all facts in light most favorable to Plaintiff, Plaintiff's claims are sufficiently facially plausible to draw the reasonable inference that FCO is liable for the alleged misconduct, and Defendant FCO's Motion to Dismiss is denied as to Count I.

Although Plaintiff has stated valid claims against FCO in Count I, his claims against Defendants Home and Henry cannot withstand their Motion to Dismiss. Plaintiff asserts that Home and Henry were debt collectors as defined by the FDCPA, but also notes that the alleged debt at issue in this action was Home's and Henry's own debt.  Plaintiff claims that "by utilizing defendant FCO to collect such debt on [their] behalf," Home and Henry were de facto debt collectors. Second Am. Compl. ¶ 11, 14.  This assertion is erroneous, as Plaintiff conflates the meaning of creditor and debt collector under the FDCPA. The alleged debt was owed to Home and Henry, and had been owed

prior to the debt going into default; accordingly, Home and Henry were creditors for the purposes of the FDCPA. By attempting to collect their own debt, which Plaintiff acknowledges they did by retaining debt collector FCO, Home and Henry do not fall under the purview of the FDCPA and cannot be held liable for the claims as alleged.

Plaintiff further asserts that Home and Henry should be held accountable as debt collectors because, in the process of collecting their own debt, they used FCO's name to indicate that a third person was attempting to collect the alleged debt at issue here. Second Am. Compl. ¶ 11, 14. This argument distorts the FDCPA, which does not prohibit a creditor from indicating that a debt collector is attempting to collect a debt on behalf of the creditor. Rather, the FDCPA forbids a creditor from attempting to collect its own debt by falsely representing that the debt is being collected by another entity. Plaintiff does not claim that Home and Henry attempted to collect their own debt after hiring FCO to collect the deceased's alleged debt on their behalf, and any indication by Home and Henry that FCO was collecting this debt does not transpose them into debt collectors. Accordingly, this Court concludes that because Home and Henry were creditors who cannot be held liable under the FDCPA, Plaintiff has failed to state a claim upon which relief may be granted and the Motion to Dismiss by Defendants Home and Henry is granted as to Count I.

Viewing all facts in light most favorable to Plaintiff, Defendant FCO's Motion to Dismiss should be denied, but the Motion to Dismiss of Defendants Home and Henry should be granted. Plaintiff has presented facially plausible claims that FCO, a debt collector, violated the FDCPA and is liable to Plaintiff. Defendants Home and Henry, however, are creditors exempt from liability under the FDCPA, and Plaintiff's claims against them cannot survive a motion to dismiss as to Count I.

**2. Count II: Violation of Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Stat. Ann. § 2270 *et seq.***

Plaintiff claims that Defendants' violations of the FDCPA comprise infractions of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. §§ 2270.1-.6 (2012). FCEUA parallels the FDCPA in prohibiting "unfair or deceptive acts or practices with regard to the collection of debts." § 2270.2; *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 231 n.4 (3d Cir. 2005) (quoting FCEUA). A debt collector[3] may be held liable for violations of the FCEUA "if [the] debt collector violates any of the provisions of the [FDCPA]." § 2270.4(a); *see also Yelin v. Swartz*, 790 F. Supp. 2d 331, 336 (E.D. Pa. 2011) (recognizing debt collector violations of the FDCPA constitute contraventions of the FCEUA). A creditor[4] may also be held liable under the FCEUA for engaging in any unfair or deceptive debt collection practice, including (1) the use of any misleading representation or means in collection of a debt, § 2270.4(b)(5); (2) falsely representing the character, amount, or legal status of a debt, § 2270.4(b)(5)(ii); (3) threatening to take an action that cannot legally be taken, § 2270.4(b)(5)(v); and (4) attempting to collect any debt that is not permitted by law, § 2270.4(b)(6)(I). *See Tauro v. Asset Acceptance*, Civ. A. No. 2:12-cv-00418, 2012 WL 2359954, at *4 (W.D. Pa. June 20, 2012) (determining that such unfair and deceptive debt collection practices by creditors violate FCEUA).

Viewing all facts in light most favorable to the nonmoving party, Defendants' Motions to

---

[3] A debt collector is defined by the FCEUA as "[a] person not a creditor conducting business within [Pennsylvania], acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor." § 2270.3(1).

[4] A creditor is defined by the FCEUA as "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." § 2270.3.

Dismiss must be denied. Plaintiff incorporates all of his FDCPA claims against Defendants in his FCEUA pleadings, noting that the FCEUA applies to both debt collectors and creditors alike. Relying almost entirely on his FDCPA claims here, Plaintiff's lone additional claim is that Defendants acted with intentional disregard of Plaintiff's rights in attempting to coerce him to pay the deceased's alleged debt.

Defendant FCO solely argues that because Plaintiff's FDCPA claims fail, so too do his FCEUA claims here. This argument is without merit. Under the FCEUA, FCO acted as a debt collector on behalf of creditors Home and Henry in attempting to collect the deceased's alleged debt. As discussed above, Plaintiff has pleaded facially reasonable claims that FCO is liable for its alleged misconduct under the FDCPA. Consequently, FCO's alleged violations of the FDCPA constitute transgressions of the FCEUA, and Plaintiff's claims are valid here; Defendant FCO's Motion to Dismiss is denied as to Count II.

Defendants Home and Henry assert that Plaintiff has failed to state a claim on which relief may be granted relief because Home and Henry did not violate the FDCPA and Plaintiff pleads only that their FDCPA violations are "per se" violations of the FCEUA. If Home and Henry did not contravene the FDCPA, they argue, they could not have contravened the FCEUA. Although Plaintiff relies entirely on his factual FDCPA allegations to support his FCEUA claims, and creditors Home and Henry do not fall under the purview of the FDCPA, the conduct by Home and Henry that Plaintiff alleges could reasonably be deemed to violate the FCEUA and entitle Plaintiff to relief.

Plaintiff incorporates his Count I FDCPA claims as though the same were fully set forth at length in his Count II FCEUA claims. Thus he pleads here, *inter alia*, that Home and Henry (1) used misleading representations in attempting to collect the debt at issue here; (2) falsely represented the

character and legal status of the debt; and (3) attempted to collect a debt that was not permitted by law. Second Am. Compl. ¶ 66, 68. Plaintiff has presented evidence to support these claims in the form of Home's and Henry's December 8, 2009, letter and Statement of Deposit. *Id.* Ex. J. Looking at this evidence in light most favorable to Plaintiff, this evidence could be construed to support Plaintiff's above allegations. The letter misleadingly claims that the final status of the deceased's security deposit is in the process of being determined, but the affixed statement of deposit clearly accounts for the security deposit in rendering a debt determination. The letter is addressed to Plaintiff and states that he would be responsible for any debt owed, although Plaintiff cannot legally be held responsible for the deceased's alleged debt. If Plaintiff did not owe this debt, any attempt to collect this debt against Plaintiff would not be permitted by law. Furthermore, this evidence may reasonably demonstrate that Home and Henry threatened to take illegal action against Plaintiff by stating that failure to pay the debt would result in further action by Home's and Henry's Collections Department. As such, Plaintiff has pleaded claims that could allow a court to draw the reasonable inference that Home and Henry are liable for the misconduct alleged. Consequently, the Motion to Dismiss by Defendants Home and Henry is denied as to Count II.

### 3. Count III: Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 et seq.

Plaintiff claims that Defendants' violations of the FDCPA, Pennsylvania's FCEUA and Pennsylvania's Landlord Tenant Act are "per se" violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("UTPCPL"). 73 Pa. Cons. Stat. § 201-1 *et seq.* The UTCPL permits "a person who purchases or leases goods or services primarily for personally, family, or household purposes" to bring a private cause of action under the UTPCPL. 73 Pa. Cons. Stat. § 201-9.2. To

proceed in a private cause of action under the UTPCPL, a plaintiff must demonstrate that he suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act, or practice declared unlawful by the Act." *Id; see also Brunwasser v. Trans World Airlines, Inc.*, 541 F.Supp. 1338, 1346-47 (W.D. Pa. 1982) ("ascertainable loss requirement of this act is designed merely to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice."). Much like the FDCPA and the FCEUA, a debt collector that engages in unfair debt collection practice under the FCEUA also violates the UTPCPL. *Yelin v. Swartz*, 790 F.Supp.2d 331, 336 (E.D. Pa. 2011); s*ee also* 73 Pa. Cons. Stat. § 2270.5(a) ("if debt collector or credit engages in unfair or deceptive debt collection act or practices under this action, it shall constitute a violation of the Unfair Trade Practices and Consumer Protection Law.").

Viewing all facts in a light most favorable to Plaintiff, Defendants' Motions to Dismiss should be granted. Defendant FCO and Defendants Home and Henry both argue that no private right of action exists for Plaintiff under UTPCPL. The UTPCPL only provides a cause of action for "a person who purchases or leases goods or services primarily for personal, family or household purposes." 73 Pa. Cons. Stat. § 201-9.2(a); *see also Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) (finding that UTPCPL does not protect those who indirectly receive benefit or an injury from goods or services); *Katz v. Aetna Cas. Ins. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) ("the statute unambiguously permits only persons who have purchased or leased goods to services to sue").

In his Complaint, Plaintiff argues that he is not legally responsible for the debt of the deceased and that the deceased, not Plaintiff, leased an apartment at William Henry Apartments from Home. *See* Pl.'s Second Am. Compl. ¶¶ 30, 31. Thus, it was the deceased (rather than Plaintiff )who

was the consumer with respect to a claim under the UTPCPL. Because Plaintiff did not lease the apartment and was indirectly injured by the lease, Plaintiff does not have a cause of action under the UTPCPL against Defendant FCO or Defendants Home and Henry. Therefore, Defendants' Motion to Dismiss shall be granted as to Count III.

### 4. Count IV: Libel

Plaintiff claims that Defendants committed libel when they maliciously and intentionally defamed Plaintiff. Libel is the written form of defamation. *Sobel v. Wingard*, 531 A.2d 520, 522 (Pa. Super. Ct. 1987). "Libel is maliciously written or printed material which tends to black a person's reputation or to expose the person to public hatred, contempt or ridicule or injure the person in his or her business or profession." *Id.* Therefore, to prevail on a libel claim, the plaintiff has the burden of proving; (1) the defamatory character of the communication; (2) its publication by the defendants; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning ; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of any conditional privilege. 42 Pa. Cons. Stat. § 8343(b)(1). In addition, the statement must be "published" or written to a third person. *Sobel,* 531 A.2d at 522.

The Fair Credit Reporting Act ("FCRA") preempts state defamation "except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Therefore, unless the credit furnisher reported false information with malice or willful intent, a plaintiff's defamation claim is preempted by the FCRA.

Viewing all facts in a light most favorable to Plaintiff, Defendants' Motions to Dismiss should be granted. Plaintiff alleges that Defendants maliciously and intentionally defamed Plaintiff by reporting to the major credit bureaus Plaintiff's delinquent debt and causing his credit score to drop and increasing his costs of credit. Pl. Second Am. Compl. ¶¶ 48, 49, 81.

Defendant FCO argues that Plaintiff's defamation claim fails as a matter of law because there are no facts alleged demonstrating 1) reporting of false information, 2) malice or willful intent to injure, 3) special harm. Specifically, FCO argues that it did not communicate inaccurate information because when it reported the debt to credit bureaus, it was reported as "in dispute." *See* Second Am. Compl. ¶ 50; Ex. P. If the completeness or accuracy of any information furnished to a credit reporting agency is disputed, then that furnisher must note that such information is disputed by the consumer. 15 U.S.C. § 1681s-2(a)(3). When the furnishers meet their duty of providing accurate information of a dispute, they have not provided false information under the FDCPA and the state action is preempted. *Cf. DiPrinzio v. MBNA America Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *3 (E.D. Pa. Aug. 24, 2005) ( Plaintiff's allegations of defamation were not preempted by FCRA because furnisher of information failed to notify credit reporting agency that debt was in dispute and therefore provided false information). Because FCO included in their communication to credit reporting agencies that the debt allegedly owed by plaintiff was "in dispute," FCO did not provide false information to a credit reporting agency for Plaintiff. Therefore, Plaintiff's claim as alleged is preempted by the FRCA. 15 U.S.C. § 1681h(e).

Defendants Home and Henry argue that Plaintiff failed to include any facts in its claim for libel that implicate Home or Henry. Plaintiff's allegations for libel focus entirely on the report generated by FCO that was sent to credit reporting agencies rather than any defamatory writing

generated by Home or Henry. Because Defendants Home and Henry are separate entities from FCO and Plaintiff has failed to allege any actions of Henry or Home in his claim of libel, Defendants Home and Henry's Motion to Dismiss should be granted. Therefore, Defendants' Motions to Dismiss shall be granted as to Count IV.

### 5. Count V: Breach of Landlord Tenant Act, 68 Pa. Stat. Ann. § 250.101 et seq.

Plaintiff also claims that Defendants collectively breached the Pennsylvania Landlord-Tenant Act ("PLTA") by retaining the deceased's security deposit, failing to provide accurate accounting of the account within thirty days and failing to place the security deposit in escrow. 72 Pa. Const. Stat. § 250.101 et seq.

The Landlord and Tenant Act of 1951 creates a series of guidelines and duties that govern the relationship between a landlord and a tenant. *See Daniels v. Baritz*, CIV.A. 02-CV-7929, 2003 WL 21027238 (E.D. Pa. Apr. 30, 2003) (explaining PLTA generally). Under 68 Pa. Cons. Stat. § 250.511a and §250.511b, a landlord who maintains a security deposit of more than one-hundred dollars must place that deposit into an escrow account. When that escrow account is interest-bearing, the landlord must give the tenant the interest paid annually. 68 Pa. Const. Stat. § 250.511b. Furthermore, if during the third or subsequent year of the lease the landlord still requires a security deposit, then upon termination of the lease the landlord must give back the security deposit and any interest earned from escrow. 68 Pa. Const. Stat. § 250.511a. Additionally, under 68 Pa. Const. Stat. § 250.512(a), landlords are required to provide the tenant within thirty days of termination of the lease a written list of the damages to the premises and payment for the difference between the security deposit and damages. Landlords who fail to provide a written list within thirty days forfeit

the right to withhold the deposit. 68 Pa. Const. Stat. § 250.512(b). Additionally, landlords who fail to pay the difference between the security deposit and the damages with the thirty day period are liable for double the amount of the original difference. 68 Pa. Const. Stat. § 250.512(c).

Viewing all facts in a light most favorable to Plaintiff, Defendants' motions should be granted. Defendant FCO argues that Plaintiff has failed to plead any facts demonstrating that FCO is liable to Plaintiff under the PLTA. Defendant FCO cannot be held liable under the act because FCO is not a landlord. FCO's debt collection activities fall outside the scope of the act and its intended purpose. Therefore, Defendant FCO's motion is granted.

Defendants Home and Henry argue that Plaintiff's claim under the PLTA must fail because Plaintiff was not the tenant of the apartment at issue and does not have standing to assert a claim under the Act. Under 20 Pa. Stat. Ann. § 301, "legal title to all personal estate of a decedent shall pass at his death to personal representative, if any, as of the date of his death." "The law is clear that all actions that survive a decedent must be brought by or against a personal representative." *Finn v. Dugan*, 394 A.2d 595, 596 (Pa. Super. Ct. 1978) (injured passenger in car accident could not sue father of deceased driver since he was not personal representative of the estate). *See also Salvadia v. Ashbrook*, 923 A.2d 436, 440, (Pa. Super. Ct. 2007) (claim brought by parents individually and on behalf of daughter dismissed when daughter died after malpractice case commenced and parents failed to seek abatement) (quoting *Marzella v. King*, 389 A.2d 659, 660-61 (Pa. Super. Ct. 1978)). A personal representative "means an executor or administrator of any description" 20 Pa. Cons. Stat. § 102.

Plaintiff brings this suit on behalf of himself and not on behalf of his father's estate as an administrator or executor. The deceased was the tenant who rented the premises from Home and

Henry and therefore had the right to a claim under Pennsylvania's Landlord Tenant Act. This claim survived the decedent and then passed to the administrator or executor of the estate. Plaintiff has not presented this claim on behalf of the deceased's estate. Rather, Plaintiff specifically alleges that he personally has standing to present this suit under the Landlord Tenant Act and brings this claim for himself. Plaintiff has not asserted that he was the executor of his father's estate or presented the claim as such. Therefore, he has failed to state a claim for relief under the PLTA. Defendants Home and Henry's Motions to Dismiss are granted as to Count V.

### 6. Count VI: Invasion of Privacy

Plaintiff claims that Defendants also invaded his privacy by reporting the contested debt to credit reporting agencies.

Invasion of privacy is four state torts: instruction upon seclusion, appropriation of name or likeness, publication of private life, and publication of the plaintiff in a false light. *Harris by Harris v. Easton Pub. Co.*, 482 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (finding that the Restatement defines elements of invasion of privacy in Pennsylvania). Plaintiff has alleged that FCO committed each of these torts by utilizing various tactics to track and trace potential sources of repayment (called "skiptracing") and reporting personal information and false information to the credit reporting agencies.

One is liable for intruding into a private area when "one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns" such that "the intrusion would be highly offensive to a reasonable person." *Id.* at 1383. The invasion may occur (1) by physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's ability to oversee or overhear the plaintiff's private affairs or (3) some other form of

19

investigation or examination into the plaintiff's private concerns. *Id.* A defendant can only be liable under intrusion upon seclusion only when he has actually intruded upon a private place or a "private seclusion that the plaintiff has thrown about his person or affairs." *Id.*

To be liable for appropriation of name or likeness, the "defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *AFL Philadelphia LLC v. Krause*, 639 F. Supp.2d 512, 513 (E.D. Pa. 2009).

To be liable for publication of a private life, the defendant must (1) publicly share (2) private facts (3) which would be highly offensive to the reasonable person and (4) is not of legitimate concern to the public. *Harris by Harris*, 483 A.2d at 1384. A private matter is "publicly shared" when the matter is communicated to the public at large or communicated to so many people that the matter must be regarded substantially as one of public knowledge. *Id.* There is no liability, however, when the facts being communicated are "public facts"- or facts that are matters of public record. Restatement (Second) of Torts § 652D.

When one gives publicity to a matter concerning another person that places the other before the public in a false light, that person is liable if 1) the false light would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Nelsh v. Beaver Newspapers, Inc.*, 581 A.2d 619, 625 (Pa. Super. Ct. 1990).

Both Defendant Home and Defendant FCO moved to dismiss Plaintiff's claim for invasion of privacy. Viewing all facts in a light most favorable to Plaintiff, his claim for invasion of privacy must be dismissed. Plaintiff's claims for invasion of privacy are directed entirely towards FCO's

disclosure of the debt to credit reporting agencies. Without any facts implicating Home and Henry for an invasion of privacy, Plaintiff's claims against those Defendants must be dismissed.

Plaintiff has also failed to allege any facts which demonstrate that FCO invaded his privacy. First, Plaintiff has failed to allege that the facts disclosed by FCO were "private facts" and not public facts. The information alleged to be reported (and included in the exhibits) are Plaintiff's name, address, phone number, etc. These are not private facts actionable for an intrusion upon seclusion claim or publication of private life claim. Second, Plaintiff has not alleged any facts that show that Defendant FCO appropriated Plaintiff's name or likeness for its own use or benefit. Plaintiff has presented no facts which show that at any time FCO held itself out as the Plaintiff. Therefore, Plaintiff cannot sustain a claim for invasion of privacy based on the appropriation of name or likeness. Third and finally, the publication to multiple credit agencies is not sufficient to allege an invasion of privacy under publication in a false light. *See Bolick v. DFS Services*, Civil No. 10-cv-5211, 2011 WL 4359987 at * (E.D. Pa. Sept. 16, 2011) (finding that plaintiff could not maintain an invasion of privacy claim for publicly placing him in a false light when credit card company only reported him to one credit reporting agency); *Smith v. PNC Bank*, Civil Action No. 10-1680, 2011 WL 2672013, at *5 (W.D. Pa. June 2, 2011) (finding that an employee did not have a publication of a person in false light when Defendant made comments to several employees about the employee because it was only communication to a small group of persons). Plaintiff only alleges that Defendant FCO posted a negative credit report with at least one credit reporting agency. This is not sufficient communication to allege "publication" necessary for an invasion of privacy claim through publication in false light.

Therefore, Plaintiff has failed to plead any facts sufficient to infer an invasion of privacy by

Defendant FCO. Therefore, Defendants' Motions to Dismiss should be granted as to Count VI.

### 7. Count VII: Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants are liable for intentional infliction of emotional distress ("IIED") because they intentionally attempted to collect a debt from Plaintiff that they knew he did not owe and that their conduct in doing so was outrageous in character.

Intentional infliction of emotional distress occurs when a defendant intentionally or recklessly engages in extreme or outrageous conduct that actually causes the plaintiff to suffer severe distress. *Regan v. Twp. of Lower Merion*, 36 F.Supp.2d 245, 251 (E.D. Pa 1999). The defendant's conduct "must be so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." Id. Therefore, the plaintiff must allege conduct that is "so outrageous in character and extreme in degree to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Wilson v. Am. Gen. Fin., Inc.,* 807 F.Supp.2d 291, 302 (E.D.Pa. 2011). A debtor-creditor relationship will not in and of itself give rise to a cause of action. *Jones v. Nissenbauk, Rudolph and Seidner*, 368 A.2d 770, 773 ( Pa. Super. Ct. 1976) (finding that letters sent to plaintiff by law firm debt collector stating their house would be sold did not rise to the level of outrageous conduct for an IIED claim). Instead, the plaintiff must show an extreme and outrageous abuse of the collection procedure used by the debt collector. *Id.* The court must determine whether the defendant's conduct can reasonably be regarded as so extreme and outrageous as to fall within the realm of intentional infliction of emotional distress. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).

Both Defendants move to dismiss Plaintiff's claim for intentional infliction of emotional

distress. Viewing all facts in a light most favorable to Plaintiff, his claim must be dismissed.

Plaintiff has failed to state a claim for intentional infliction of emotional distress. In his complaint, Plaintiff alleges that Defendants FCO, Home and Henry attempted to collect a debt from Plaintiff which they knew did not belong to Plaintiff and in doing so committed a "plethora" of illegal acts pursuant to a written policy of targeting surviving heirs with the highest credit score. Plaintiff, however, has failed to allege any specific facts that demonstrate outrageous or extreme conduct that is atrocious and exceeded all possible bounds of decency. While Plaintiff has alleged that Home and FCO abused the debt collection procedure, he has failed to allege any facts which rise to the level of intentional infliction of emotion distress. Home and FCO may have engaged in an abusive debt collection process by targeting heirs or relatives to a loved one. However, Plaintiff has only alleged that in following this practice, Home and FCO used letters, phone calls, and reporting to credit agencies to solicit payment for the debt from Plaintiff. Such behavior, without more, does not rise to the level of outrageous or egregious conduct for intentional infliction of emotional distress. Therefore, Defendants' Motions will be granted as to Count VII.

### 8. Count VIII: Civil Conspiracy

Plaintiff also brings a claim for civil conspiracy against Defendants FCO and Home and Henry. Plaintiff alleges that Home and FCO agreed to 1) collect debts without proper validations under law; 2) engage in a series of illegal pre-collection activities that involve the use of illegal letters and 3) pursue debts that were waived and uncollectable under law.

A civil conspiracy arises when "a combination of two or more persons [agree] to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." *Baker*

*v. Rangos*, 324 A.2d 498, 506 (Pa. Super. Ct. 1974). To state a claim for civil conspiracy, the plaintiff must establish an underlying tort. *Boyanowsky v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). Additionally, proof of malice- or the intent to injure- is an essential part of the conspiracy cause of action. *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006).

Viewing the facts in a light most favorable to Plaintiff, Plaintiff's claim for civil conspiracy must be dismissed. Plaintiff has failed to allege any facts which demonstrate a civil conspiracy. Specifically, Plaintiff has failed to allege that Defendants agreed to commit an unlawful or criminal act. Plaintiff alleges that Defendants FCO and Home "contracted for a series of illegal, self-styled 'pre-collection' activities that involve the use of illegal letters" and "agreed to chase debts without proper validations required under law." Second. Am. Compl. ¶¶ 104, 105. Plaintiff has failed to allege any facts that support this inference. Rather, Plaintiff relies on the contract between FCO and Home that he attached to the complaint. *See* Second Am. Compl. Ex. B. However, this record undercuts Plaintiff's argument, because the agreement specifically states that "[FCO] agrees that its collection activities shall meet the constraints of the Fair Debt Collection Practices Act and other applicable federal, state and local laws and statutes." Plaintiff relies on the contract between FCO and Home to establish the agreement necessary in civil conspiracy. The document, however, clearly states that the parties agree to act lawfully and use lawful means. Plaintiff has failed to allege any facts from which this Court can infer an agreement to commit an unlawful or criminal act. Without this crucial element, Plaintiff cannot maintain a claim of civil conspiracy. Therefore, Defendants' Motions to Dismiss are granted as to Count VIII.

### 9. Count IX: Declaratory Relief

Plaintiff requests declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. Plaintiff requests declaratory relief for Defendants FCO and Home and Henry's violations of the FDCPA and its corresponding equivalents under Pennsylvania state law. However, "injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA." *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004). Therefore, Defendants' Home and FCO's Motions to Dismiss will be granted as to Count IX.

## V. Conclusion

For the reasons stated above, Defendant FCO's Motion to Dismiss will be granted as to Counts III, IV, V, VI, VII, VIII, and IX. Defendants Home and Henry's Motion to Dismiss will be granted as to Count I, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, and Count IX. Therefore, Plaintiff's claims under the FDCPA and Pennsylvania's Fair Credit Extension Uniformity Act (Counts I and II) survive these motions.

An appropriate Order follows.